2009-02702
FILED
November 02, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002193851

MARK A. REDMOND, ESQ. (SBN 161520)
ATTORNEYS AGAINST ABUSE OF ELDERS
1819 K Street, Suite 200
Sacramento, CA 95811
Phone (916) 444-8240
Fax. (916) 438-1820

Attorney for Plaintiffs

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
(Sacramento Division)

In Re SENIOR CARE ADVOCATES, INC.
(Debtor)

---

DANNY STEAKLEY, MIGUEL and LAURA POSADA, JOHN and JOANN SHOULDERS, JOSEPH and JOANN PIDD, RITA BACHMANN, ALBERT MUELLER, CORINE THORNTON, WYNG CHINN, LOIS BECK

v.

SENIOR CARE ADVOCATES, INC.

Case No.: 09-37259-C-7

Adv No.: _

COMPLAINT TO DETERMINE NON-DISCHARGEABLITY OF DEBT (11 USC 523 & 727)

Plaintiffs bring this action against SENIOR CARE ADVOCATES, INC. to determine the non-dischargeablity of debt pursuant to 11 U.S.C §523(a)(2)(A) and (6); and 11 U.S.C. §727 and in support thereof alleges as follows:

1. On August 14, 2009, SENIOR CARE ADVOCATES, INC. and its' sole officer and shareholder JAMES A. WALKER each filed for bankruptcy protection. Over the years, SENIOR CARE ADVOCATES, INC. has propagated a campaign of fear targeting seniors. The purpose of this campaign was to convince seniors that they would likely require long term care and that the cost of this care would result in them losing both their lifetime savings and their homes. Seniors were then convinced that they could avoid this possibility only if they

purchased SENIOR CARE ADVOCATES, INC.'s Long Term Care Planning Package. SENIOR CARE ADVOCATES, INC. charged outrageous fees for seniors to learn of their "secret" plan. Typically these fees were between $10,000 and $20,000 but did range to as much as $68,500. After the fear-filled seniors paid SENIOR CARE ADVOCATES, INC. its fee, they were assured by SENIOR CARE ADVOCATES, INC. that they would be eligible for Medi-Cal benefits if they gifted away all of the funds to a trusted party, while still having access to the funds and not reporting the mechanics and understanding of this transfer to the Medi-Cal program. In other words, they advised seniors to perpetrate a fraud on Medi-Cal that would permit them to qualify for Medi-Cal should they ever require long term care in the future. This same advice was sold to all seniors regardless of circumstance, worth or need. This advice was sold to people who already qualified for Medi-Cal because of how little money they had. This "secret" advice was sold to people worth hundreds of thousands and even millions of dollars. It was sold to people with no immediate health issues. It was sold to people who already had private long term care insurance. It was sold to people who were too proud to ever consider going on Medi-Cal. It was sold to people too proud and too independent to consider giving away all of their assets.

2. JAMES A. WALKER is and at all times herein mentioned was, an attorney licensed to practice law before the State of California. JAMES A. WALKER has just recently resigned his law license effective November 30, 2009. State bar charges remain pending against JAMES A. WALKER despite his voluntary resignation.

3. JAMES A. WALKER is the sole shareholder of SENIOR CARE ADVOCATES, INC.

4. SENIOR CARE ADVOCATES, INC. solicited clients via radio shows, mass mailings and public speaking events.

5. SENIOR CARE ADVOCATES, INC.'s business practices involved multiple frauds including:

    A. Fraud Regarding Fear Of Losing One's Lifetime Savings and Home – What SENIOR CARE ADVOCATES, INC. really sold was fear. SENIOR CARE ADVOCATES, INC. told seniors that most likely they would require long term care at some point in their lives

and that the cost of this care would wipe out their lifetime savings and force the state to promptly take their home. Both of these claims are false. Most seniors either never require long term care or require long term care for relatively minor lengths of time which can be paid for via private health insurance, Medi-Care, private savings or some combination of these options. SENIOR CARE ADVOCATES, INC. intentionally failed to gather facts from their senior victims which would have shown that many of them already qualified for Medi-Cal benefits to pay for their nursing home costs. SENIOR CARE ADVOCATES, INC. intentionally failed to advise senior victims of the Spousal Impoverishment laws permitting the spouse at home to keep certain exempt assets (home, car, personal property, retirement accounts and a Community Spouse Resource Allowance of $109,560) and still qualify for Medi-Cal. SENIOR CARE ADVOCATES, INC. also intentionally falsely represented that Medi-Cal eligibility would cause a senior victim to immediately lose their homes to the State without advising them of certain bars to State claims for reimbursement against spouses and disabled children and the fact that claims are only related to the amount the State paid for care. SENIOR CARE ADVOCATES also misrepresented the average fee for trust administration at death as between 3-9% of the value of the estate. Probate fees rarely run as much as 4% for attorney fees, with the average trust administration fee averaging much less. Thus, SENIOR CARE ADVOCATES, INC.'s statements that most likely seniors will require long term care and that this will result in their losing all of their assets and home is false and intended to scare seniors into purchasing their overpriced advice.

B. Fraud In Who The Advice Was Sold To – SENIOR CARE ADVOCATES, INC. sells the same advice to all seniors. SCA sells to seniors who already would qualify for Medi-Cal the advice to give away all of their monies and qualify for Medi-Cal. SCA sells to wealthy seniors who should never require Medi-Cal. SCA sells to healthy seniors who will never likely need long term care the same advice. SCA sells to seniors with existing long term care insurance the same advice. Moreover, SCA intentionally never discusses with seniors the quality of the long term care which Medi-Cal offers as opposed to

private long term care insurance. SCA intentionally never discusses those items which Medi-Cal does not cover such as residence in a board and care facility. SCA never discusses the possibility that Medi-Cal benefits may diminish or perhaps even go away all together in the future. SCA sells a modern elixir that is designed to cure all ills but really is just common household ingredients which should cost little to nothing and be given only to those for whom it is appropriate.

C. Fraud In Encouraging Seniors To Commit Medi-Cal Fraud - SENIOR CARE ADVOCATES, INC. assured their senior clients that they would be eligible for Medi-Cal benefits if they gifted an amount of funds to another party, while still having access to these funds, and not reporting the mechanics and understanding of this transfer to the Medi-Cal Progarm. Thus, SENIOR CARE ADVOCATES, INC. was advising their clients to obtain Medi-Cal benefits on the basis of false information regarding their Medi-Cal eligibility.

D. Fraud Regarding The Duration of Services – SENIOR CARE ADVOCATES, INC. promised that their services were available "for life." SENIOR CARE ADVOCATES, INC. knew that such services would be eliminated by their unexpected insolvency such as is occurring presently and thus, that their services were not available "for life."

E. Fraud Regarding The Prices And Value of The Services Sold – SENIOR CARE ADVOCATES, INC. charged seniors whatever amounts they could get away with. Frequently these amounts ranged from $10,000 and $20,000 to receive their long term care "planning secret." In one instance SENIOR CARE ADVOCATES, INC. charged $68,500 for their "planning secret." Their advice had no more than nominal value. SENIOR CARE ADVOCATES, INC.'s advice was misrepresented to have a great value based upon the false potential planning needs of customers. While their advice varied exponentially in price depending upon what they could charge a customer, their secret advice itself was always the same: give away all your liquid assets to someone you trust and can control, so that you could get on Medi-Cal should you ever require long term care.

Complaint for Non-Dischargeablity

Page 4

6. At the time that SENIOR CARE ADVOCATES, INC made the statements described in paragraph 5, it knew that the representations were false.

7. SENIOR CARE ADVOCATES, INC made the false statements described in paragraph 5 with the intent and purpose of deceiving each of the plaintiffs herein, and others similarly situated.

8. As senior citizens afraid of long-term health care costs, each of the seniors justifiable relied on SENIOR CARE ADVOCATES, INC and JAMES A. WALKER's statements as JAMES A. WALKER was an educated attorney and was ostensibly knowledgeable in the law as it relates to seniors.

9. Based upon the false information described above, SENIOR CARE ADVOCATES, INC. solicited the Plaintiffs to enter into contracts with SENIOR CARE ADVOCATES, INC.. The basic terms under the contracts were that seniors would pay to SENIOR CARE ADVOCATES, INC. a fee, typically between $10,000 and $20,000, and SENIOR CARE ADVOCATES, INC. would give them a fool-proof plan to pay for any long term care needs.

10. The Plaintiffs and each of them paid the sums as set forth in schedule "A" attached hereto to SENIOR CARE ADVOCATES, INC. for the services described above.

11. The Secretary of State for the State of California maintains a Victims of Corporate Fraud Compensation Fund as set forth in California Corporations Code Section 1502, 1502.5 and 2117.

12. Title 2, Division 7 of the California Code of Regulations, Chapter 12, sections 22500 et. Seq. govern applications for the fund and provides in relevant part that to make a claim on the fund, the claim must have been reduced to a judgment and that if a bankruptcy is pending that the judgment and debt must have been declared to be non-dischargeable.

13. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 157 and 1334, 11 U.S.C. §523, and 11 U.S.C. §727.

14. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) and a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(I) and (O).

15. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

//

//

## FIRST CLAIM FOR RELIEF
(11 U.S.C. §523(a)(2)(A))

16. The Plaintiffs re-allege and fully incorporate the allegations pleaded above.

17. As set forth above, the debtor by and through its authorized representative made representations that at the time the debtor knew to be false.

18. The debtor's authorized representative made those representations with the intention and purpose of deceiving the plaintiffs.

19. The plaintiffs justifiably relied on those representations.

20. The plaintiffs sustained losses as a direct and proximate result of the debtor's representations as set forth in Schedule "A" to this complaint.

Wherefore, Plaintiffs request a judgment be entered against the Debtor declaring the debts to be non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) in the respective amounts as set forth in Schedule "A".

## SECOND CLAIM FOR RELIEF
(11 U.S.C. §727)

21. The Plaintiffs re-allege and fully incorporate the allegations pleaded above.

22. The Debtor is not an individual, but rather is a corporate entity.

23. A corporate entity is not eligible for a discharge in a Chapter 7.

24. According to the State of California regulations as they apply to the Victims of Corporate Fraud Compensation Fund, the Plaintiffs are not eligible to file a claim with the fund at this time without an order or judgment declaring the debt non-dischargeable.

Wherefore, Plaintiffs request the court issue a declaratory judgment that the debts of the Defendant owed to the Plaintiffs are not dischargeable.

# RELIEF

Wherefore, the Plaintiffs respectfully request that the court enter judgment against SENIOR CARE ADVOCATES, INC. as follows:

1. The debts to the Plaintiffs by the Debtor described above are non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) in the respective amounts as set forth in Schedule "A".

2. The Debtor is not an individual, and thus the debts are non-dischargeable by this action pursuant to 727(a)(1).

Dated: October 30, 2009

_____
Mark A. Redmond, Esq.

## SCHEDULE A

| First Name | Last Name | Address | City | State | Zip | Amount |
|---|---|---|---|---|---|---|
| Danny | Steakley | 3509 Elite Drive | Sacramento | CA | 95823 | $ 7,000.00 |
| Miguel & Laura | Posada | 6109 Hutton Court | Marysville | CA | 95901 | $ 20,500.00 |
| John and Joann | Shoulders | 1668 79th Avenue | Oakland | CA | 94621 | $ 20,958.00 |
| Joseph and JoAnn | Pidd | 11601 Big Four Way | Gold River | CA | 95670 | $ 20,000.00 |
| Rita | Bachmann | 265 Via Casitas | Greenbrae | CA | 94904 | $ 19,900.00 |
| Albert | Miller | 489 Tahos Road | Orinda | CA | 94563 | $ 16,490.00 |
| Corine | Thornton | 24417 Margaret Drive | Hayward | CA | 94542 | $ 21,000.00 |
| Wyng | Chinn | 1651 East Worth Street | Stockton | CA | 95205 | $ 6,500.00 |
| Lois | Beck | 3276 Tomahawk Rd | Cool | CA | 95614 | $ 12,500.00 |